24-192
In re: Search Warrant dated November 3, 2021

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of July, two thousand twenty-four.

PRESENT:
        JOSEPH F. BIANCO,
        MYRNA PÉREZ,
        SARAH A. L. MERRIAM,
            *Circuit Judges*.

---

In re: Search Warrant dated November 3, 2021.
-------------------------------------------------------

SPENCER MEADS,

        *Petitioner-Appellant*,

v.                                         24-192

UNITED STATES OF AMERICA,

        *Respondent-Appellee*.

---

| | |
|---|---|
| FOR PETITIONER-APPELLANT: | RICHARD L. SULLIVAN, Law Office of Richard L. Sullivan, Brockport, New York. |
| FOR RESPONDENT-APPELLEE: | ROBERT B. SOBELMAN, Assistant United States Attorney (Jacqueline Kelly, Mitzi Steiner, Danielle R. Sassoon, Kevin T. Sullivan, Stephen J. Ritchin, Lisa P. Korologos, and Nathan Rehn, |

Assistant United States Attorneys, *on the briefs*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, New York.

Appeal from an order of the United States District Court for the Southern District of New York (Analisa Torres, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order, entered on December 21, 2023, is **AFFIRMED**.

Petitioner-Appellant Spencer Meads appeals from the district court's order authorizing the disclosure to the government of certain materials on electronic devices that were seized pursuant to search warrants executed at the residences of James O'Keefe, Eric Cochran, and Meads in November 2021.[1] All three individuals were previously affiliated with Project Veritas, which describes itself as "a national media organization dedicated to undercover investigative journalism." App'x at 145 (internal quotation marks and citation omitted). O'Keefe founded Project Veritas and served as its President until February 2023 and, at the time of the events in 2020 that were the focus of the search warrant, Meads and Cochran each had the title of investigative journalist for the organization. Concerned that the seized devices contained materials protected by the journalist's privilege or the attorney-client privilege, Project Veritas, O'Keefe, Cochran, and Meads (collectively, "Petitioners") requested that the district court appoint a special master to oversee the review of the seized documents. The district court granted that request and, on March 21, 2023, the special master issued a Report and Recommendation ("R&R") identifying 943 documents as responsive to the search warrants (the "Responsive Materials"). With respect to Petitioners' claims of privilege, the special master concluded that: (1) none of the Responsive

---

[1] A magistrate judge approved the search warrants based on affidavits establishing probable cause that electronic devices at the residences of O'Keefe, Cochran, and Meads contained evidence of federal crimes related to a conspiracy involving the theft and interstate transportation of stolen property.

Materials was protected by the journalist's privilege; (2) twenty-four documents were at least partially protected by the attorney-client privilege; and (3) ten documents would have been protected by the attorney-client privilege but fell within the crime-fraud exception and were therefore subject to disclosure. The district court issued an order adopting the R&R in its entirety and overruling Petitioners' objections, which claimed that the special master applied incorrect legal standards and erred in her analysis of the claimed evidentiary privileges.[2] *See generally In re Search Warrant dated Nov. 5, 2021*, Nos. 21 Misc. 813 (AT) *et seq.*, 2023 WL 8868371 (S.D.N.Y. Dec. 21, 2023). Meads challenges that order on appeal, asserting primarily the same arguments raised by Petitioners below. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## I. Jurisdiction

As a threshold matter, the parties dispute whether we have appellate jurisdiction over the district court's order approving the release of certain materials to the government over the objections of a party under criminal investigation. Meads argues that we have jurisdiction under Section 1291, which grants this Court "jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. The government, on the other hand, contends that, "although the District Court's order concluded the privilege litigation," the order is not final within the meaning of the statute "because the litigation is linked to a grand jury investigation that may lead to Meads's prosecution," and "Meads can vindicate his claims in the event he is indicted and prosecuted." Appellee's Br. at 12–13. The government relies primarily on *Standard Drywall, Inc.*

---

[2] Petitioners argued, *inter alia*, that: (1) all Responsive Materials were protected by the journalist's privilege; (2) eleven additional documents were protected by the attorney-client privilege (*i.e.*, beyond the twenty-four that the special master identified as privileged); and (3) no documents qualified for the crime-fraud exception to the attorney-client privilege.

3

*v. United States*, 668 F.2d 156 (2d Cir. 1982), in which this Court held that an order denying a motion under Federal Rule of Criminal Procedure 41 was not appealable "[w]here, as here, the party moving for return of seized property is the subject of a grand jury inquiry, [because] allowance of an appeal from denial of the motion would interfere with the grand jury proceedings and permit piecemeal appeals." *Id.* at 158 (footnote and citations omitted).

We need not determine whether *Standard Drywall* extends to the circumstances of this case. Where, as here, "a question of statutory (non-Article III) jurisdiction is complex and the claim fails on other more obvious grounds, this Court can assume hypothetical jurisdiction." *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 123 (2d Cir. 2020); *see also Butcher v. Wendt*, 975 F.3d 236, 244 (2d Cir. 2020) (finding the assumption of hypothetical jurisdiction "particularly appropriate . . . where the jurisdictional issue is both novel and arguably complex, while [appellant's] claims are plainly meritless"). We thus assume we have jurisdiction over this appeal and proceed to the merits of Meads's claims.

## II. Privilege Determinations[3]

We review the district court's privilege determinations for abuse of discretion. *See United States v. Mejia*, 655 F.3d 126, 131–32 (2d Cir. 2011) (attorney-client privilege); *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011) (journalist's privilege). "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (alteration adopted) (internal

---

[3] We also reject Meads's relevance and responsiveness challenges. Meads erroneously asserts that the *Gonzales* test governs whether materials are responsive to a search warrant. "We look directly to the text of the search warrant to determine the permissible scope of an authorized search." *United States v. Johnson*, 93 F.4th 605, 613 (2d Cir. 2024). After reviewing the sealed materials, and the text of the warrants themselves, we find that the challenged materials fall within the broad scope of the search warrants here.

quotation marks and citations omitted). "Identification of the correct legal standard raises a pure question of law, as to which we exercise plenary review." *Chevron Corp.*, 629 F.3d at 306.

### a. Journalist's Privilege

On appeal, Meads challenges the district court's conclusion that none of the Responsive Materials was protected by the journalist's privilege, arguing that the district court applied an incorrect legal standard. As set forth below, we find Meads's arguments unpersuasive.

This Court "has long recognized a qualified evidentiary privilege for information gathered in a journalistic investigation." *Id.* at 306. This privilege is "intended to protect the public's interest in being informed by a vigorous, aggressive and independent press, by limiting the circumstances in which litigants may obtain access to press files through court-ordered discovery." *Id.* at 306–07 (emphasis, internal quotation marks, and citations omitted). The journalist's privilege applies to both confidential and nonconfidential information; however, "where the protection of confidential sources is not involved, the nature of the press interest protected by the privilege is narrower." *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 36 (2d Cir. 1999). When an interest in preserving confidential sources is at stake, "disclosure may be ordered only upon a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources." *McGraw-Hill, Inc. v. Arizona (In re Petroleum Prods. Antitrust Litig.)*, 680 F.2d 5, 7 (2d Cir. 1982). However, "when protection of confidentiality is not at stake, . . . the showing needed to overcome the privilege is less demanding than the showing required where confidential materials are sought." *Gonzales*, 194 F.3d at 36. Thus, when the information is nonconfidential, the party seeking

disclosure need only "show that the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources." *Id.*

Here, the Responsive Materials relate to Project Veritas's investigation of a potential story based on information provided by two sources—Aimee Harris and Robert Kurlander. In September 2020, Harris discovered that an individual (the "Victim"), whose immediate family member was a candidate for national political office, had stored personal property, including a handwritten journal, at a house in Florida where Harris was temporarily residing. After Harris stole the property, she and Kurlander allegedly provided it to Project Veritas, which paid each of them $20,000. In August 2022, Harris and Kurlander pled guilty to offenses arising from this conduct. Although Petitioners argued that Harris and Kurlander had provided the stolen property to Project Veritas under a promise of confidentiality, the district court concluded that communications with or about Harris or Kurlander and the information they provided were not confidential for purposes of the journalist's privilege because, by pleading guilty, Harris and Kurlander had "revealed to the public that they were the ones who provided the Victim's journal and additional items to Project Veritas." *In re Search Warrant dated Nov. 5, 2021*, 2023 WL 8868371, at *6. The district court thus applied the less-demanding *Gonzales* test for nonconfidential information and concluded that the government had met its burden of showing that the Responsive Materials were relevant to the criminal conduct under investigation and were not reasonably obtainable from other sources.

We conclude that the district court applied the proper legal standard and discern no abuse of discretion in the district court's determinations under that standard. As the district court correctly recognized, "the protection of confidential sources is not involved" where, as here, the information sought has been made public by the sources themselves. *United States v. Treacy*, 639

F.3d 32, 42 (2d Cir. 2011) (internal quotation marks and citation omitted) (applying the *Gonzales* test because "not only was [the journalist] not protecting any confidential material or source, he sought to withhold evidence that his source himself . . . desired be disclosed"); *see also United States v. Cutler*, 6 F.3d 67, 73–75 (2d Cir. 1993) (requiring production of reporters' unpublished notes as to source's public statements but not as to statements by anonymous government officials). Thus, even assuming *arguendo* that Harris and Kurlander initially provided the stolen property to Project Veritas under a promise of confidentiality, the Responsive Materials became nonconfidential once Harris and Kurlander pled guilty and revealed to the public that they were Project Veritas's formerly confidential sources. Since the Responsive Materials are nonconfidential, the district court properly applied the *Gonzales* test, finding that the government had overcome the privilege because: (1) the government's "investigation is focused on Petitioners' actions" and the magistrate judge and special master both "reviewed the materials to determine whether they were, in fact, responsive to the warrants and relevant to the Government's case"; and (2) "[w]hether evidence is on Petitioners' devices is relevant to Petitioners' knowledge and intent."[4] *In re Search Warrant dated Nov. 5, 2021*, 2023 WL 8868371, at *7–8.

On appeal, Meads challenges the district court's use of the *Gonzales* test, arguing that the Responsive Materials remain confidential and are additionally protected by general First Amendment principles. First, Meads contends that Harris's and Kurlander's guilty pleas cannot

---

[4] Meads contends that the district court failed to conduct the required *de novo* review of the R&R because it did not analyze the Responsive Materials on a document-by-document basis in its opinion. However, where, as here, a district court indicates that it has independently reviewed the special master's (or magistrate judge's) determination and conducted a *de novo* review of all objections, there is no basis to question that the district court completed the necessary review. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 526 (2d Cir. 1990); *see also Murphy v. Int'l Bus. Machines Corp.*, 23 F.3d 719, 722 (2d Cir. 1994) ("We do not construe the brevity of the order as an indication that the objections were not given due consideration . . . ."). In addition, the district court sufficiently addressed all of the objections to the R&R, including the assertion that other confidential sources were contained in the Responsive Materials.

7

render the Responsive Materials nonconfidential because the documents were created prior to their pleas, and neither a journalist nor a source can "unilaterally negate . . . confidentiality to the detriment of the other." Appellant's Br. at 27. Meads, however, misconstrues the applicable legal standard under *Gonzales*. To be sure, the journalist's privilege belongs to the journalist, *see Branzburg v. Hayes*, 408 U.S. 665, 695 (1972); that said, whether the information claimed to be protected by the privilege is *confidential* depends on whether that information is public—regardless of who made it public and when, *see Cutler*, 6 F.3d at 73–75; *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987) ("Matters actually disclosed in public lose their privileged status because they obviously are no longer confidential. The cat is let out of the bag, so to speak."). Therefore, because Harris's and Kurlander's guilty pleas disclosed their identities as confidential sources and the details of the information they provided to Project Veritas, the Responsive Materials reflecting that information were not confidential.[5]

Meads further contends that the district court should have evaluated the Responsive Materials in light of *Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001), where the Supreme Court held that the First Amendment protects the publication of information by a "law-abiding possessor of information," even if the publisher received the information from a source who obtained it unlawfully. He argues that, under *Bartnicki*, the First Amendment "shields journalists from investigation" into any conduct other than their alleged participation in the theft of information. Appellant's Br. at 20. We disagree. As the Supreme Court stated in *Branzburg*, 408 U.S. at 691, "[i]t would be frivolous to assert . . . that the First Amendment, in the interest of securing news or otherwise, confers a license on either the reporter or his news sources to violate valid criminal

---

[5] Moreover, during the pendency of this litigation, Petitioners repeatedly made disclosures in public court documents regarding the identity of Project Veritas's confidential sources, as well as details surrounding the information they provided.

laws." In *New York Times Co. v. Gonzales*, 459 F.3d 160, 173 (2d Cir. 2006), applying *Branzburg*, we held that the First Amendment did not prevent the disclosure of confidential source communications to a grand jury investigation "when there [was] probable cause to believe that the press" had engaged in criminal conduct. Here, a magistrate judge issued search warrants after finding probable cause that the Petitioners' electronic devices contained evidence of federal crimes including conspiracy to transport stolen property across state lines and possess stolen goods. *See* 18 U.S.C. §§ 371, 2314, 2315. The district court, agreeing with the recommendation of the special master, then determined that the Responsive Materials were relevant to the categories set forth in the search warrants. *See New York Times Co.*, 459 F.3d at 170 (concluding that it was "beyond argument that the evidence from the reporters [was] on its face critical to [the criminal] inquiry" into the reporters' conduct). Despite Meads's arguments to the contrary, the holding of *Bartnicki* does not protect the Responsive Materials from disclosure when the *Gonzales* test is satisfied.

In sum, the district court did not abuse its discretion in determining that the Responsive Materials were not protected by the journalist's privilege.

    b. **Attorney-Client Privilege**

Meads also argues that the district court erred in concluding that certain of the Responsive Materials were not protected by the attorney-client privilege. In particular, he contends that the district court erroneously concluded that seventeen documents did not reflect requests for legal advice and that ten documents qualified for the crime-fraud exception. We disagree.[6]

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of

---

[6] Because we find Meads's challenges to the district court's determinations regarding the attorney-privilege to be without merit, we need not address the government's threshold argument that Meads lacks standing to assert, or litigate on appeal, the privilege on behalf of Project Veritas with respect to the Responsive Materials.

obtaining or providing legal advice." *Mejia*, 655 F.3d at 132. When in-house lawyers also serve as business executives, "the question usually is whether the communication was generated for the purpose of obtaining or providing legal advice as opposed to business advice." *Pritchard v. Cnty. of Erie* (*In re Cnty. of Erie*), 473 F.3d 413, 419 (2d Cir. 2007). "When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged." *Id.* at 421. Moreover, "it is well-established that communications that otherwise would be protected by the attorney-client privilege . . . are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *United States v. Roe* (*In re Richard Roe, Inc.*), 68 F.3d 38, 40 (2d Cir. 1995) (alteration adopted) (internal quotation marks and citation omitted). "[A] party seeking to invoke the crime-fraud exception must at least demonstrate that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof." *Id.* We review a district court's determination that the crime-fraud exception applies for abuse of discretion, and any "factual determinations are governed by the clearly erroneous standard." *United States v. Jacobs*, 117 F.3d 82, 87, 89 (2d Cir. 1997), *abrogated on other grounds by Loughrin v. United States*, 573 U.S. 351 (2014).

Here, the district court determined that nine documents were not protected by the attorney-client privilege because they did not reflect requests for legal advice, and that ten documents were not protected because they qualified for the crime-fraud exception to the privilege. With respect to the first category, the district court concluded that documents communicating certain facts to Project Veritas's Chief Legal Officer ("CLO") did not, as Petitioners argued, constitute an implicit request for legal advice regarding newsworthiness. The district court also concluded that communications between legal and non-legal personnel regarding efforts to authenticate the stolen

journal did not reflect legal advice. On appeal, Meads argues that "legal counsel for media organizations . . . routinely advis[e] journalists on the element of newsworthiness," and speculates that such advice must have been "an acute consideration" in Project Veritas's efforts to authenticate the journal. Appellant's Br. at 42; *see also* Reply Br. at 29 (arguing that "legal liability was a constant consideration" given Project Veritas's tactics and that "members of Project Veritas understandably preferred to have attorneys in near-constant communication as investigations unfolded"). Meads does not, however, identify any instance in which such advice was provided, or otherwise point to any error in the district court's assessment of the documents at issue.[7] We accordingly conclude that the district court did not abuse its discretion in determining that the documents at issue were not protected by the attorney-client privilege.

With respect to the crime-fraud exception, the district court concluded that ten documents were created in furtherance of the conspiracy for which the magistrate judge had found probable cause and therefore were not protected by the attorney-client privilege. In particular, the district court found that each of the ten documents demonstrated an effort to conceal the criminal conspiracy or to create or present misleading or false evidence, or otherwise served to further the conspiracy. Meads argues on appeal that this conclusion was an error because "it was not established that (1) a crime or fraud post-dating the legal advice was committed; or (2) that the communication in issue was in furtherance of that conduct." Appellant's Br. at 46. We are not persuaded. First, although seven of the ten documents post-date Project Veritas's receipt of the stolen property, documents need not pre-date that specific event in order to further the conspiracy,

---

[7] In his Reply Brief, Meads argues that certain of the Responsive Materials do in fact reflect explicit requests for legal advice. However, the district court concluded that the documents that Meads identifies as containing such requests qualified for the crime-fraud exception to the attorney-client privilege. Thus, it is unnecessary to address Meads's argument that these particular documents reflect legal advice in order to determine whether the district court properly analyzed claims of attorney-client privilege with respect to these documents.

11

particularly with respect to Petitioners' possession of stolen property, which is one of the federal crimes for which a magistrate judge found probable cause. Second, the district court *did* make the requisite finding that "there [was] probable cause to believe that the particular communication[s] with counsel . . . w[ere] intended in some way to facilitate or to conceal the criminal activity." *In re Richard Roe, Inc.*, 68 F.3d at 40. Meads takes issue with the basis for this finding, arguing that these ten documents "clearly involve typical legal advice Petitioners sought from their attorneys routinely," Appellant's Br. at 46–47 n.14, and that there is "no evidence that . . . Project Veritas ha[d] knowledge or reason to believe the [Victim's] diary or other property may have been stolen, let alone that Project Veritas journalists participated in any such theft," *id.* at 48. However, the district court directly reviewed the documents at issue and reached the opposite conclusion. Having reviewed these documents for the purposes of this appeal, we do not find that this was an erroneous assessment of the evidence, much less a clearly erroneous assessment. *See In re Sims*, 534 F.3d at 132.

In sum, we conclude that the district court did not abuse its discretion in connection with the attorney-client privilege determinations.

\*     \*     \*

We have considered Meads's remaining arguments and find them to be without merit.[8]

Accordingly, we **AFFIRM** the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[8] Meads additionally argues that the district court erred in denying Petitioners' motion for the return of seized property pursuant to Federal Rule of Criminal Procedure 41(g). We review the grant or denial of relief under Rule 41(g) for abuse of discretion, but "we review *de novo* any legal conclusion underlying" that decision. *United States v. Zaleski*, 686 F.3d 90, 92 (2d Cir. 2012). Rule 41(g) "permits a person aggrieved by the government's unlawful seizure or deprivation of property to move for specific relief: the property's return." *Adeleke v. United States*, 355 F.3d 144, 149 (2d Cir. 2004). "[D]uring the pendency of an ongoing criminal investigation or proceeding, the defendant bears the burden of demonstrating that the government's retention of the seized property is unreasonable." *Allen v. Grist Mill Cap. LLC*, 88 F.4th 383, 396 (2d Cir. 2023). Meads has not shown why the government's retention of the property during the pendency of its ongoing criminal investigation is unreasonable, and there is therefore no basis to disturb the district court's denial of the Rule 41(g) motion.

13